UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARTIN F. SLATTA,<br><br>                      Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                      Defendant. | Case No. 3:10-cv-05271-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On September 20, 2004, plaintiff filed an application for disability insurance and another for SSI benefits, alleging disability as of January 1, 2002, due to depression, anxiety and forgetfulness. See Tr. 20, 93, 101, 105, 118, 350. His applications were denied both at the initial

ORDER - 1

administrative level of review and upon reconsideration thereof. See Tr. 20, 77, 79, 84, 354, 359. A hearing was held before an administrative law judge ("ALJ") on August 4, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 369-91.

On August 26, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 20-29.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 24, 2010, making the ALJ's decision defendant's final decision. See Tr. 5; see also 20 C.F.R. § 404.981, § 416.1481. On April 21, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on June 29, 2010. See ECF #8.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred in: (1) not finding his mental health condition and hearing loss to be "severe" impairments; (2) assessing plaintiff's substance abuse; (3) and failing to find his mental health condition met or medically equaled the criteria of 20. C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 ("Listing 12.04").  For the reasons set forth below, the Court disagrees that the ALJ erred as alleged above or in determining plaintiff to be not disabled, and therefore hereby finds that the ALJ's decision should be affirmed.

### DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to

ORDER - 2

support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. To be found disabled, furthermore, the claimant must establish he or she is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and

ORDER - 3

aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff did "**not have an impairment or combination of impairments that [had] significantly limited (or [was] expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months**," and thus had no **"severe impairment or combination of impairments**." Tr. 23 (emphasis in original). Plaintiff argues he has severe depression, anxiety and hearing loss, which significantly affect his ability to perform basic work activities. The ALJ, however, expressly found that plaintiff's anxiety and depression were not severe, because the record showed he was "not consistently" treated for a mental health condition, produced at most only "**[m]ild findings**" on mental status examination and exhibited only "**[m]ild restrictions**" in the "**functional domain**s" of attending to activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace. See Tr. 24-28 (emphasis in original).

The Court finds the record supports the ALJ in finding plaintiff did not have any severe mental impairment on this basis. In arguing otherwise, plaintiff relies in part on the findings of

ORDER - 4

two non-examining, consultative psychologists, who assessed plaintiff with moderate limitations in concentration, persistence and pace. See Tr. 249, 253-54. The ALJ considered this evidence, but again found plaintiff to have "at most mild limitations in concentration, persistence, or pace, for the reasons set forth above," and noted herein. Tr. 28. Those indeed are valid reasons. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of physician if it is inadequately supported by clinical findings or record as whole); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Indeed, the moderate limitations assessed by the above two medical opinion sources are themselves questionable, given that the reviewing psychologists expressly stated in the narrative portion of the state agency mental residual functional capacity form they completed – in which they also had listed the specific moderate limitations they found – that plaintiff was "able to cope with stress," had "minimal limitations" in concentration, persistence and pace and also remained "capable of functioning on a day to day basis and perform[ing] in work situations." Tr. 255. Although the ALJ did not specifically give this as a reason for declining to adopt the moderate limitations checked off on the above form, it lends further credence to the other valid reasons the ALJ gave for rejecting those limitations.

Plaintiff also refers to the testimony he gave at the hearing concerning his alleged mental health impairments and limitations, as additional support for a finding that his ability to perform work-related limitations had been more than minimally affected. At step two of the disability evaluation process, however, while the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence in the record:

ORDER - 5

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.  <u>At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities</u>.  If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  Accordingly, the ALJ did not err in relying on plaintiff's testimony to find he had no severe mental impairment, especially given that the ALJ found him to be not fully credible concerning his subjective complaints, and that plaintiff has not specifically challenged that credibility determination.[1] <u>See</u> Tr. 24-26; <u>see also</u> <u>Carmicle v. Commissioner of Social Sec. Admin.</u>, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); <u>Paladin Associates., Inc. v. Montana Power Co.</u>, 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); <u>Kim v. Kang</u>, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

Plaintiff points to the fact that Bruce A. Eather, Ph.D., an examining psychologist, found he had both a markedly depressed mood and moderate social withdrawal, as well as a moderate limitation in his ability to understand, remember and follow complex (i.e., more than two-step) instructions and a marked limitation in his ability to respond appropriately to and tolerate the

---

[1] The same is true in regard to plaintiff's assertion that the ALJ erred in failing to find his alleged hearing loss was a severe impairment, as there is no medical evidence in the record indicating the existence of such an impairment, let alone work-related limitations stemming therefrom, and thus that assertion appears to be based solely on plaintiff's own subjective complaints.

ORDER - 6

pressures and expectations of a normal work setting. See Tr. 277-78. However, the first two of the above four findings are merely indicative of plaintiff's reported symptoms, and do not in themselves establish specific assessed work-related limitations. In any event, the ALJ properly addressed Dr. Eather's findings as follows:

> In December of 2003, Dr. Eather assessed moderate limitations in the claimant's ability to remember and follow complex instructions and marked limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Of note, the doctor found no limitations in the claimant's ability to relate appropriately to co-workers and supervisors and only mild limitations in his ability to interact appropriately to co-workers and supervisors and only mild limitations in his ability to interact appropriately in public contacts. The doctor cited marked depression and anxiety, as well as decreased stress tolerance. But he noted the claimant was pleasant and cooperative, with "good interpersonal skills." The doctor also acknowledged that the claimant was independent in his activities of daily living, said he was able to cook, do laundry, shop, use the bus. Ex 9F/1. On mental status examination he was linear and goal directed, with organized responses. He was oriented times 3 and was able to name the current and preceding presidents. He was aware of current events and was able to spell the word "world" correctly both forward and backward. He performed serial 7s. The moderate limitation found in the claimant's ability to understand, remember, and follow complex instructions was based on the claimant's ability to perform 2-3 steps and recall only 1/3 objects after a five minute delay. Ex 9F/1. I have considered this performance, but conclude that it is insufficient to support a moderate limitation in the claimant's ability to perform complex instructions, considering his completely normal performance on mental status examination while incarcerated just one month before. *See* Ex 10F. Arguably, the claimant suffered greater stress while incarcerated than he would on a [state agency] evaluation, and yet no deficits were assessed on the mental status examination performed at the jail.

Tr. 26-27. Again, plaintiff has not mounted any specific challenge to the above stated reasons for not adopting the moderate and marked mental functional limitations Dr. Eather found, and the Court finds them to be valid. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if inadequately supported by clinical findings); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between functional assessment of medical source and that source's clinical notes, recorded observations or other comments concerning

ORDER - 7

claimant's abilities is clear and convincing reason for not relying on that assessment); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).

Plaintiff next points to evidence in the record that he had sought treatment in the form of counseling at a mental health clinic, that he complained there of depression, anxiety and suicidal thoughts, that he was noted to have a long history of depression and anxiety, that he had reported delusions following the death of his son, and that he was diagnosed by those who evaluated him with bereavement, depression, anxiety and alcohol dependence, as well as a global assessment of functioning ("GAF") score[2] of 45-65. First, the mere fact that a claimant seeks and/or receives treatment, has a history and has complained of mental health conditions and symptoms, and has been diagnosed with mental impairments, alone is insufficient to establish the existence of work-related limitations, let alone disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of symptoms or impairment is insufficient proof of disability).

Second, in regard to the assessed GAF score, the ALJ found in relevant part:

> In October of 2003, the intake clinician at Comprehensive Mental health assigned a global assessment of functioning (GAF) score of 55-65,[3] after

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

[3] There appears to be some disagreement as to the specific range of GAF score assessed by plaintiff's mental health evaluators here, with plaintiff stating a range of 45 to 65 was assessed, and the ALJ finding the range to be 55 to 65. "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34). On the other hand, "A GAF score of 61-70 reflects mild symptoms or "some difficulty" in those areas, but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994)). A review of the particular page of the record in question fails to clearly resolve this issue, as it is unclear whether the first numeral of the lower end of the range score was intended to be a four or a five. See Tr. 318. Resolution thereof

ORDER - 8

>noting that the claimant was homeless, unemployed, and lacking health insurance. Ex. 12F. I have considered this GAF score and its implications with regard to the claimant's residual functional capacity, but decline to give it much weight because it appears clear that it was based not on the claimant's mental health impairments, but on situational stressors of being homeless, unemployed and uninsured. This impression is confirmed by the claimant's next visit to Comprehensive Mental Health, at which he presented extremely tearful over bereavement issues, but by the end of the session announced that he was going fishing in Alaska and would therefore not be in town for his next session. The claimant also declined medications. The [mental health practitioner] observed that the claimant had apparently "resolved his issues and came up with his o[w]n solution to deal with his problems." Ex 12F/16.

Tr. 26. Once more, plaintiff does not explain why the ALJ's stated basis for declining to adopt the assessed GAF score range were improper, nor does the Court find them to be. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part because other evidence of claimant's ability to function, including reported daily activities, contradicted that conclusion); Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989) (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with plaintiff's testimony). Thus, the ALJ did not err in rejecting this evidence.

Lastly with respect to his mental impairments, plaintiff argues the ALJ erred in failing to take into proper account the diagnoses of a major depressive episode, alcohol dependence in reported full remission and a personality disorder with schizoid feature made by Richard Panzer, M.D., an examining physician, as well as the GAF score of 52 he assessed. See Tr. 343. Once more, though, mere diagnoses are insufficient to establish impairment severity or disability. In addition, the ALJ properly dealt with the assessed GAF score as follows:

>In March of 2005, Dr. Panzer assessed a GAF score of 52. Ex 15F/3. But when specifically assessing the claimant's functioning, the doctor found

---

is not necessary, though, given that as explained in greater detail below, the ALJ did not err in declining to adopt the GAF score range to the extent it reflected more than minimal work-related limitations.

ORDER - 9

> virtually no restrictions.  He noted that the claimant would have no difficulty with performing simple and repetitive tasks.  As for more complex tasks, the doctor opined that this "would certainly be a matter of his motivation although there was nothing to suggest that he would have any considerable difficulty with that."  Dr. Panzer felt the claimant's ability to relate to supervisors, co-workers, or the public would not be problematic both by the claimant's own admission and his own estimate.  The doctor felt the claimant would be able to dealt [sic] with ordinary work stress provided he had supportive counseling and medication for his depression and anxiety, and he felt the claimant's attendance "would be completely a function of his desire." Ex 15F/3.  It is not entirely clear why Dr. Panzer assessed such a low GAF score, considering he found no restrictions in functioning, with the exception of those that were apparently within the claimant's control.  I give greater weight to the medical source statement [of Dr. Panzer summarized by the ALJ above], which fully supports my finding of no severe mental health impairments.

Tr. 27.  As before, plaintiff has not stated why the Court should find the ALJ's determination in regard to Dr. Panzer's assessed GAF score was improper, nor will the Court do so.  See Bayliss, 427 F.3d at 1216 (discrepancies between physician's assessment and that physician's comments regarding claimant's abilities is clear and convincing reason for not relying on that assessment); Weetman, 877 F.2d at 23.

II.     The ALJ's Evaluation of Plaintiff's Substance Abuse

Plaintiff argues the ALJ's decision is internally inconsistent in that while the ALJ found plaintiff's substance abuse to be a medically determinable impairment, the ALJ also found it to be non-severe.  But as pointed out by defendant, there is no inconsistency here.  That is, an ALJ certainly can find an impairment to be medically determinable (i.e., it results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" (20 C.F.R. § 404.1508, § 416.908)), which must be shown to meet the first basic requirement for establishing disability, but still find that it does not cause significant work-related limitations, the standard for establishing severity at the second step of the sequential disability evaluation process.

ORDER - 10

Plaintiff goes on to argue that the inconsistency in the ALJ's decision in regard to this issue makes it difficult to determine whether his substance abuse is in fact material. As discussed above, there is no such inconsistency. In addition, a determination of materiality is not relevant here, given that the ALJ found the substance abuse did not affect his "functioning to a significant degree," and therefore it was not severe. See Tr. 23. A claimant may not be found disabled if substance abuse would be "a contributing factor material to [defendant's] determination" that the claimant is disabled. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). It is only in those cases where the claimant is found to be disabled "and there is 'medical evidence of [his or her] drug addiction or alcoholism,'" that the ALJ then proceeds "to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs,'" i.e., whether alcohol or drug use is material. Id. (citing 20 C.F.R. § 404.1535, § 416.935). Such is not the case in this matter. Indeed, it was to plaintiff's benefit that the ALJ found his substance abuse to be non-severe, given that he cannot be found to be disabled if that abuse is determined to be material.

III.     The Alleged Errors Regarding Step Three of the Sequential Disability Evaluation Process

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments contained in the Listings. See 20 C.F.R § 404.1520(d), § 416.920(d); Tackett, 180 F.3d at 1098. If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or medically equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

ORDER - 11

As discussed above, a mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, medically equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of medical equivalence. Id.  The ALJ, furthermore, "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above,

ORDER - 12

the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

Plaintiff argues the ALJ erred in failing to finding his alleged mental impairments met or medically equaled the criteria contained in Listing 12.04 (affective disorders). But as discussed above, the ALJ properly found plaintiff did not have a severe mental impairment, in that none of those he alleged to have caused more than a minimal affect on his ability to perform basic work activities. Accordingly, because of that finding, and the ALJ's determination that plaintiff had no severe impairments overall, the ALJ properly found plaintiff to be not disabled at step two of the sequential disability evaluation process, and was not required to continue on to step three of that process. Nor, given the propriety of the ALJ's findings concerning plaintiff's impairments and minimal limitations, can plaintiff show that the criteria contained in Listing 12.04 have been met or medically equaled.[4] Plaintiff's argument here thus is without merit.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff

---

[4] To meet the criteria of Listing 12.04, plaintiff must establish the presence of at least two of the following: a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Alternatively, plaintiff must establish a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration," which causes "more than a minimal limitation" in his ability to perform basic work activities, along with "symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04B, C. Clearly, in light of the ALJ's findings and the discussion thereof above, plaintiff cannot meet his burden of proof here, nor has he shown that he has.

ORDER - 13

1  was not disabled, and therefore hereby affirms defendant's decision.

2  DATED this 22nd day of February, 2011.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14